IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NERLENS NOEL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:21-cv-2485 |
| | § | |
| RICHARD PAUL and KLUTCH | § | |
| SPORTS GROUP, LLC, | § | |
| | § | |
| Defendants. | § | |

**<u>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS</u>**


# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................................................................ ii

I. **REPLY** ............................................................................................................................... 1

    *A. The Arbitration Agreement is Enforceable* ........................................................ 1

        1. Texas Civil Practice and Remedies Code § 16.070 Does Not Apply ..................... 1

        2. The Arbitration Provision is Not Unconscionable .................................................. 3

    *B. All of Plaintiff's Claims Are Subject to Arbitration* ........................................... 5

        1. Plaintiff's Declaratory Judgment Action Will Either be Mooted or is Arbitrable .. 5

        2. Plaintiff's Fiduciary Duty, Negligence, and Good Faith/Fair Dealing Claims Against Paul are Arbitrable ...................................................................................... 6

        3. Plaintiff's Claims Against KSG are Arbitrable ....................................................... 7

    *C. Plaintiff Has Not Established that this Court has Jurisdiction Over Either Defendant* ................................................................................ 8

II. **CONCLUSION** .................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Bakhico Co., Ltd. v. Shasta Beverages, Inc.*,
   No. 3:94-cv-1780-H, 1998 WL 25572 (N.D. Tex. Jan. 15, 1998) ............................................. 1

*Barnett v. DynCorp International, L.L.C.*,
   831 F.3d 296 (5th Cir. 2016) ..................................................................................................... 1

*Choctaw Generation Ltd. v. Amer. Home Assur.*,
   271 F.3d 403 (2d Cir. 2001) ....................................................................................................... 7

*Colwell Realty Investments, Inc. v. Triple T Inns of Arizona, Inc.*,
   785 F.2d 1330 (5th Cir. 1986) ................................................................................................... 9

*Denney v. Jenkins & Gilchrist*,
   412 F. Supp. 2d 293 (S.D.N.Y. 2005) ....................................................................................... 7

*DeSantis v. Wackenhut Corp.*,
   793 S.W.2d 670, 678 (Tex. 1990), *cert. denied*, 498 U.S. 1048 (1991) .................................... 2

*Evergreen Media Holdings, LLC v. Safran Co.*,
   68 F. Supp. 3d. 664 (S.D. Tex. 2014) .............................................................................. 8, 9, 10

*Gillman v. Chase Manhattan Bank, N.A.*,
   73 N.Y.2d 1 (1988) ................................................................................................................ 3, 5

*Holt Oil & Gas Corp. v. Harvey*,
   801 F.2d 773 (5th Cir. 1986) ..................................................................................................... 9

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002) ..................................................................................................................... 4

*Isaacs v. OCE Bus. Servs., Inc.*,
   968 F. Supp.2d 564 (S.D.N.Y. 2013) ........................................................................................ 5

*Lawrence v. Miller*,
   11 N.Y.3d 588 (2008) ................................................................................................................ 3

*Micheletti v. Uber Techs., Inc.*,
   213 F.Supp.3d 839 (W.D. Tex. 2016) ....................................................................................... 2

*Monkton Ins. Services, Ltd. v. Ritter*,
   768 F.3d 429 (5th Cir. 2014) ............................................................................................ 8, 9, 10

*SMK Painting Co. v. Flournoy Constr. Co., LLC*,
   No. Civ. A. 3:99–CV–0916–G, 1999 WL 1017779 (N.D. Tex. Nov. 8, 1999) ........................ 9

On October 18, 2021, Defendants Paul and KSG[1] filed their Motion to Dismiss (the "Motion") (Dkt. 3) clearly outlining sufficient grounds for dismissal of this suit based on both the applicable arbitration agreement and lack of personal jurisdiction. Plaintiff Noel filed his Opposition to Defendants' Motion to Dismiss and Brief in Support (the "Response") on November 15, 2021 (Dkt. 9). Defendants file this Reply and respectfully states as follows:

## I. REPLY IN SUPPORT OF MOTION TO DISMISS

### A.   *The Arbitration Agreement is Enforceable*

Plaintiff's main argument regarding why this dispute should not be arbitrated relates to the NBPA Agent Regulations' provision governing timeframes. Plaintiff complains that the NBPA Agent Regulations' timeframe for filing grievances: 1) violates Texas statutory law; and 2) is inconsistent with Texas and New York common law. Both of these arguments lack merit.

#### 1.   **Texas Civil Practice and Remedies Code § 16.070 Does Not Apply**

Plaintiff first argues that the NBPA filing timeframe requirements for grievances violates Texas Civil Practice and Remedies Code § 16.070 (which prohibits parties from contracting to limit the timeframe in which to bring suit on such contract to less than two years). However, this Texas statute does not apply here as the SPAC specifically states that New York law applies. *Barnett v. DynCorp International, L.L.C.*, 831 F.3d 296, 308 (5th Cir. 2016) (rejecting plaintiff's argument that Tex. Civ. Prac. & Rem. Code § 16.070 invalidated contractual choice of Kuwati law due to fact that such law had a one-year statute of limitations); *Bakhico Co., Ltd. v. Shasta Beverages, Inc.*, No. 3:94-cv-1780-H, 1998 WL 25572, at *11 (N.D. Tex. Jan. 15, 1998) (holding that, where the contract contained a choice of Virginia law, Tex. Civ. Prac. & Rem. Code § 16.070 did not apply).

---

[1] Capitalized terms used but not defined herein shall be defined as set forth in Defendants' Motion.

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – PAGE 1**

Although Plaintiff's Response contains two footnotes suggesting that Texas could be the proper choice of law, neither are persuasive. The first states that a contractual choice of law provision in an arbitration agreement should be disregarded citing to *Micheletti v. Uber Techs., Inc.*, 213 F.Supp.3d 839 (W.D. Tex. 2016). (Dkt. 9, p. 8-9, n. 4). *Micheletti*, however, does not stand for this general proposition. Rather, *Micheletti* states that if there is a delegation provision in an arbitration agreement (*i.e.*, a provision purporting to delegate the question of arbitrability to the arbitrator), whether such provision is effective or not is determined by reference to the law that would apply to the contract according to the forum state's choice of law rules. Here, there is no delegation provision in the SPAC arbitration provision or the NBPA Agent Regulations. Thus, *Micheletti* is wholly inapplicable.

Plaintiff's second footnote states that courts may disregard the parties' choice of law if there is no reasonable basis for the parties' election. (Dkt. 9, p. 12, n. 5). This simplistic statement is an inaccurate statement of Texas' choice of law doctrine. Rather, Texas law respects the parties' choice of law unless it is established that: 1) some other state's law has a more significant relationship with the parties and the transaction; 2) such state has a materially greater interest in the issue before the court; and 3) such state's fundamental policy would be contravened by application of the law of the chosen state. *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 678 (Tex. 1990), *cert. denied*, 498 U.S. 1048 (1991). In suggesting that Texas law should apply, Plaintiff apparently confuses the SPAC with his Dallas Mavericks player contract. While Texas arguably had an interest in the contract between the Dallas Mavericks and Noel as it was to be performed partially in Texas, Texas has no interest in the SPAC between Noel and Paul. The SPAC was to be performed by Paul out of his offices in California as a delegee of collective bargaining powers held by the NBPA, which is headquartered in New York. (Dkt. 4, App. 029).

Paul's duties under the SPAC included representation of Noel before teams throughout the U.S. and Canada that are all organized under the NBA, also headquartered in New York, and pursuant to the CBA negotiated between the NBA and NBPA. Furthermore, disputes under the SPAC are to be arbitrated in New York, Chicago, or Los Angeles. (App. 4, App. 071). New York clearly has an interest in the SPAC, the NBPA, and the NBA; Texas does not. Further, the Fifth Circuit has previously stated that Tex. Civ. Prac. & Rem. Code § 16.070 is ***not*** a fundamental policy of Texas. *Barnett*, 831 F.3d at 306-308 (5th Cir. 2016). Thus, even if Plaintiff had attempted to establish the *Wackenhut* factors in favor of Texas law, which Plaintiff did not, such attempt would fail as he can establish none of the three required factors.

      **2.**      **The Arbitration Provision is Not Unconscionable**

Plaintiff next argues that the NBPA Agent Regulations' timeframe for grievance filing "violates Texas and New York common law." (Dkt. 9, p. 13). Although the Response does not state it directly, Plaintiff's argument is that the arbitration provision in the SPAC is unconscionable. New York law requires that a party resisting arbitration establish ***both*** procedural and substantive unconscionability. *Lawrence v. Miller*, 11 N.Y.3d 588, 595 (2008); *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988). Plaintiff cannot establish either factor.

Procedural unconscionability relates to the manner in which the agreement was entered. Successful procedural unconscionability challenges typically result from situations where the party resisting arbitration was presented a contract of adhesion by the drafter who occupies a substantially stronger negotiation position. *See Lawrence*, 11 N.Y.3d at 595 (defining procedural unconscionability as an absence of meaningful choice on the part of one of the parties). This is certainly not the case here. Rather, it is Plaintiff, not Paul, that is the drafter of the arbitration provision. Plaintiff is a member of the NBPA (his union bound by the NLRA with a duty to fairly represent him). The NBPA drafted the SPAC, the NBPA Agent Regulations, and the arbitration

provisions with an eye toward protecting player, not agent, interests. This is functionally no different than if Plaintiff's personal attorney drafted the agreement himself. Paul, as an agent certified by the NBPA to represent NBA players, is presented with the SPAC without the ability to negotiate it in any manner beneficial to himself, *i.e.*, the SPAC is essentially a contract of adhesion for Paul.

Substantive unconscionability relates to the terms of the agreement. In his effort to establish substantive unconscionability, Plaintiff wholly misrepresents the timeframes contained in the NBPA Agent Regulations by stating that it is unreasonable to expect that he could have "discovered, investigated, obtained proof of, or otherwise been in a position to meaningfully arbitrate the full extent of his injuries resulting from Defendants' conduct within that 30-day window." (Dkt. 9, p. 15). In reality, the SPAC/NBPA Agent Regulations require that a grievance be filed within the latter of: 1) 30 days from the date of the occurrence; *or* 2) 30 days from the date on which the facts of the matter become known or reasonably should have become known to the grievant. (Dkt. 4, App. 069). The NBPA Agent Regulations merely require that a grievance be submitted promptly upon a player or agent determining that a grievance exists, *i.e.*, within 30 days.[2] Thereafter, the NBPA Agent Regulations contemplate a later hearing during which Plaintiff will have the ability to present evidence and witnesses to support his claims. (Dkt. 4, App. 071).

---

[2] Notably, in the Response, Plaintiff states that he did comply with the timeframes in the NBPA Agent Regulations. Plaintiff states that he determined the facts underlying the grievance in "August of 2021." (Dkt. 9, p. 15). Plaintiff filed his grievance on August 23, 2021. (Dkt. 4, App. 010-016). Should the timeliness of Plaintiff's grievance be an issue in the arbitration, Plaintiff may present his evidence to support his claim of timeliness. However, whether Plaintiff submitted his grievance in a timely manner is unquestionably a question for the arbitrator, especially given the circumstances here where the NBPA's arbitrator is an expert in interpreting and applying the NBPA Agent Regulations. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 85 (2002) (holding that the question of whether a party submitted a timely arbitration demand is ***not*** a "question of arbitrability" and, as such, is a question for the arbitrator to resolve and further stating that the specific case presented an instance where the arbitrators are clearly more expert in determining the applicability of the time limit rule as the arbitrators are specific to this particular organization).

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – PAGE 4**

There is no requirement in the NBPA Agent Regulations that Plaintiff have "investigated, obtained proof of, or otherwise…meaningfully arbitrate[d] the full extent of his injuries" within 30 days.

Importantly, the main thrust of a determination whether an agreement is substantively unconscionable is "an analysis of the substance of the bargain to determine whether the terms were unreasonably favorable to the party against whom unconscionability is urged." *Gillman*, 73 N.Y.2d at 10.  The NBPA Agent Regulations do not contain separate timeframes applicable to players and agents (or any substantively separate terms for that matter).  Rather, the timeframes and all other terms apply equally to both parties.  When the terms of the agreement apply equally to both parties to an agreement, courts find that the terms are not unreasonably favorable and not substantively unconscionable.  *Isaacs v. OCE Bus. Servs., Inc.*, 968 F. Supp.2d 564, 569-70 (S.D.N.Y. 2013) (holding that "[w]hen both an employer and its employees are bound to an agreement to arbitrate" and "when the terms of the agreement are equally applicable to both parties…the terms of the Policy are not one-sided and the policy is not substantively unconscionable").

B.     *All of Plaintiff's Claims Are Subject to Arbitration*

      1.     **Plaintiff's Declaratory Judgment Action Will Either be Mooted or is Arbitrable**

Plaintiff first argues that his declaratory judgment claim seeking a declaration that the grievance filing timeframes are unenforceable is outside the scope of the arbitration agreement. This claim is indistinguishable from his argument that the arbitration provision is unconscionable. As discussed above, the timeframes are not unconscionable and the arbitration provision is enforceable.  This moots Plaintiff's declaratory judgment claim.  Alternatively, Plaintiff describes his declaratory judgment claim as questioning whether the timeframes in the SPAC/ NBPA Agent Regulations are "invalid, void, and unenforceable." (Dkt. 9, p. 16).  Thus, this claim is necessarily

a claim regarding the "interpretation, application, or enforcement of [the SPAC]," *i.e.*, a claim clearly within the scope of the arbitration agreement. (Dkt. 4, App. 007).

### 2. Plaintiff's Fiduciary Duty, Negligence, and Good Faith/Fair Dealing Claims Against Paul are Arbitrable

Plaintiff next argues that his fiduciary duty, negligence, and good faith and fair dealing claims are outside the scope of the arbitration agreement. To do so, Plaintiff again misrepresents as narrow what in reality is broad language in the SPAC. The SPAC states the scope as, "[a]ny and all disputes between the Player and the Agent involving the meaning, interpretation, application, or enforcement of [the SPAC] *or the obligations of the parties under [the SPAC]*." (Dkt. 4, App. 007) (emphasis added). The obligations of the parties under the SPAC are set out in the SPAC and the incorporated NBPA Agent Regulations.[3] The SPAC requires that Paul:

- "represent [Plaintiff]…in conducting individual compensation negotiations for the performance of [Plaintiff's] services as a professional basketball player;"
- "[a]fter a contract with [Plaintiff's] club is executed…continue to assist, advise, and counsel [Plaintiff] in enforcing his rights under that contract;" and
- "act[] in a fiduciary capacity on behalf of [Plaintiff]." (Dkt. 4, App. 005).

In turn, the NBPA Agent Regulations contain an entire section dedicated to the obligations of player agents towards players under the SPAC. (Dkt. 4, App. 054-062). The NBPA Agent Regulations require agents to, among other things, "carry out the representational services…with the highest degree of professional competence and integrity," and they prohibit conduct such as "engaging in…conduct involving dishonesty, fraud, deceit, misrepresentation, or other conduct which reflects adversely on his fitness as a Player Agent or jeopardizes the effective representation of Players" and "failing to advise the Player." (Dkt. 4, App. 61-62). Plaintiff's claims against

---

[3] Plaintiff incorrectly states that the NBPA Agent Regulations are not incorporated within the SPAC. (Dkt. 9, p. 18). The SPAC specifically incorporates the NBPA Agent Regulations in Section 1 of the SPAC. (Dkt. 4, App. 007).

Paul all complain in some manner of Paul's alleged failings with respect to Paul's representation of Plaintiff, *i.e.*, Paul's obligations to Plaintiff under the SPAC. As such, they undoubtedly all fall within the scope of the arbitration agreement. Notably, Plaintiff is currently arbitrating these claims against Paul via the NBPA's prescribed arbitration process (thereby tacitly acknowledging the arbitrability of such claims) while simultaneously stating in the Response they are not arbitrable. (*Compare* Dkt. 4, App. 010-016 to Dkt. 9, p. 17).

### 3. Plaintiff's Claims Against KSG are Arbitrable

Finally, Plaintiff argues that his claims against KSG are not arbitrable.[4] As stated in the Motion, non-signatories can compel arbitration of a signatory's claims against it under an estoppel theory that, based on New York law, looks at the relationship between the parties and whether the claims are intertwined with the contract containing the arbitration provision. *Choctaw Generation Ltd. v. Amer. Home Assur.*, 271 F.3d 403, 406 (2d Cir. 2001). To combat KSG's argument, Plaintiff confusingly cites a quote from *Denney v. Jenkins & Gilchrist*, 412 F. Supp. 2d 293, 298 (S.D.N.Y. 2005) recognizing the importance of "[t]he plaintiff's actual dependence on the underlying contract in making out the claim against the signatory defendant." (Dkt. 9, p. 18). This is exactly the reason for KSG's Motion. Plaintiff cannot escape the SPAC in making claims against KSG. All of Plaintiff's claims against KSG are based on the theory that Paul/KSG failed to adequately represent him, or, stated another way, failed to adequately discharge their obligations under the SPAC.[5] Even when attempting to cite to an allegation in the Complaint that Plaintiff

---

[4] As an initial matter, Plaintiff states "Defendant Klutch is not a party to any agreement with Plaintiff, let alone one containing an arbitration provision." (Dkt. 9, p. 1). This is inaccurate. Plaintiff and KSG entered into a Marketing and Promotional Services Representation Agreement on August 21, 2017. This agreement contains an arbitration provision. Therefore, although KSG is not a signatory to the SPAC, Plaintiff and KSG certainly contemplated the concept of arbitration with respect to disputes between them.

[5] Indeed, the SPAC/NBPA Agent Regulations specifically state that, "[c]onduct by an employee or associate of a Player Agent that would violate these Regulations shall be deemed to be conduct of the Player Agent…." (Dkt. 4, App. 58).

believes is evidence of KSG's activity independent of Paul, it still relates to the SPAC. Plaintiff states that he decided not to terminate the SPAC based on a representation from a KSG employee that they were working on a three-year contract with the Thunder. (Dkt. 9, p. 18). There is nothing in the Complaint that suggests in any manner that Plaintiff's claims against KSG are not inextricably intertwined with the SPAC, especially given the fact that all actions of KSG employees are deemed actions of Paul under the SPAC/NBPA Agent Regulations. (Dkt. 4, App. 58).

### C.  Plaintiff Has Not Established that this Court has Jurisdiction Over Either Defendant

If the Court does not find the matter must be compelled to arbitration, Plaintiff has still failed to establish jurisdiction. In attempting to establish specific jurisdiction[6] over Paul and KSG, Plaintiff focuses on three types of contacts. First, Plaintiff focuses on his own contacts with Texas. Plaintiff attempts to convert his contacts into Defendants' contacts pointing out that: 1) **Plaintiff** was a Texas resident when he entered the SPAC; 2) **Plaintiff** declined a long-term contract offer from a Texas company (the Mavericks); 3) **Plaintiff** accepted a one-year contract with the Mavericks; and 4) **Plaintiff** performed substantial services for the Mavericks in Texas (practicing and playing games at the Mavericks' facilities in Texas). While Paul may have been Plaintiff's agent during this time, Plaintiff's contacts with Texas remain his own. *Monkton Ins. Services, Ltd. v. Ritter*, 768 F.3d 429, 433 (5th Cir. 2014) (holding that plaintiff's contacts with the forum cannot be used to demonstrate contacts by the defendant); *Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d. 664, 675 and 684 (S.D. Tex. 2014) (stating "the plaintiff cannot be the sole link between the defendant and the forum" and holding that the plaintiff incorrectly focused on its own contacts with Texas when the relevant inquiry relates to the defendant's contacts).

---

[6] Plaintiff admittedly does not attempt to establish general jurisdiction. (Dkt. 9, p. 21).

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – PAGE 8**

Second, Plaintiff focuses on the fact that Paul contracted with Plaintiff while Plaintiff was a Texas resident. While Plaintiff may have been a Texas resident at the time the SPAC was entered, Paul was not, and neither party executed the SPAC in Texas. (Dkt. 4, App.001-002). The mere fact that a nonresident defendant enters into a contract with a Texas resident does not, by itself, support the exercise of jurisdiction by a Texas court over the nonresident. *Monkton*, 768 F.3d at 433; *Colwell Realty Investments, Inc. v. Triple T Inns of Arizona, Inc.*, 785 F.2d 1330, 1334 (5th Cir. 1986); *Evergreen Media*, 68 F. Supp. 3d at 673, n. 5 and 676, 684. Even this fact is diminished by the SPAC's provision stating that New York law applies. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (holding that the fact that defendant entered into contract with Texas resident was diminished by Oklahoma contractual choice of law provision). Further, while Plaintiff may have been a Texas resident at the moment of the SPAC's execution in August 2017, he was not a Texas resident for the majority of the time the SPAC was in effect, moving to Oklahoma in 2018 and later to New York.

Third, Plaintiff focuses on communications between himself while he was in Texas and Paul and/or KSG representatives who were not in Texas at the time.[7] Communications, including emails and telephone calls, in developing or carrying out the contract do not constitute adequate purposeful availment of the benefits and protections of Texas law. *Holt Oil*, 801 F.2d at 778; *Evergreen Media*, 68 F. Supp. 3d at 673, n. 5 and 676, 684; *see also*, *SMK Painting Co. v. Flournoy Constr. Co., LLC*, No. Civ. A. 3:99–CV–0916–G, 1999 WL 1017779, at *4 (N.D. Tex. Nov. 8, 1999) (stating, "[t]he Fifth Circuit has held that negotiating, executing, and even partially performing an isolated contract with a resident of the forum will not, without more, constitute the minimum contacts necessary to confer jurisdiction" and holding that the fact that the resident

---

[7] Plaintiff also mentions the fact that Paul advised Plaintiff to decline the Mavericks' long-term offer. This alleged communication admittedly occurred in California. (Dkt. 10, App. 2, ¶ 11).

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS – PAGE 9**

plaintiff was in Texas and communicating with the non-resident defendant while it was outside Texas did not establish specific jurisdiction over the defendant). Plaintiff does not controvert the fact that neither Paul nor any representative of KSG traveled to Texas in connection with the SPAC or representation of Plaintiff. (Dkt. 4, App. 002-003). Rather, Plaintiff continues to rely only on the fact that he was in Texas for a brief period during the time the SPAC was in effect. This does not establish specific jurisdiction over either Defendant. *Evergreen Media*, 68 F. Supp. 3d at 684 (stating that plaintiff did not establish specific jurisdiction over defendant when ***defendants'*** performance or nonperformance of the contract did not take place in Texas).

As a final note, the question of specific jurisdiction focuses on the relationship between the defendant, the forum, and the litigation. *Monkton Ins. Services, Ltd.*, 768 F.3d at 432-33. Plaintiff's claims in the litigation are focused on Defendants' alleged failure to obtain Plaintiff a large, long-term deal following the conclusion of Plaintiff's one-year contract with the Mavericks for the 2017/2018 NBA season. Plaintiff did not play for the Mavericks or any other team in Texas following the 2017/2018 season. Therefore, whatever contractual/fiduciary breaches or negligent conduct that Plaintiff complains of was allegedly perpetrated by Defendants outside of Texas during a time when Plaintiff was not a resident of Texas.

## II. CONCLUSION

For the reasons set forth above and in Defendants' Motion, Defendants respectfully request that this Court dismiss this lawsuit in its entirety and compel all claims to arbitration. In the alternative, Defendants respectfully request that this Court dismiss this lawsuit in its entirety for lack of personal jurisdiction. Defendants also request their attorneys' fees and costs in preparing this Motion and Reply and all such other and further relief which this Court deems to be appropriate.

Date: November 29, 2021                    Respectfully Submitted,

                                              */s/ Ann Marie Arcadi*
Ann Marie Arcadi (SBN 00786994)
annmarie.arcadi@arcadijackson.com
Seema Tendolkar (SBN 24053509)
seema.tendolkar@arcadijackson.com
John M. Farrell (SBN 24059735)
john.farrell@arcadijackson.com
ARCADI JACKSON, LLP
2911 Turtle Creek Blvd., Suite 800
Dallas, Texas 75219
Telephone: 214-865-6458
Facsimile: 214-865-6522

*Attorneys for Defendants Richard Paul and Klutch Sports Group, LLC*

## CERTIFICATE OF SERVICE

    I hereby certify that on the 29th day of November, 2021, I electronically filed the foregoing with the Clerk of the Court by using its CM/ECF system which will send a notice of electronic filing to all counsel of record.

                                              */s/ John M. Farrell*
John M. Farrell